UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JOHN J. BRYLSKI,

Plaintiff,

v. Case No.: 26-CV-945

BRIAN SCHMIDT, and
ROBERT M. MIHELICH,

Defendants.

---

**BRIAN SCHMIDT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM**

---

NOW COMES the Defendant, Brian Schmidt ("Answering Defendant" or "Schmidt"), and as for his Answer and Affirmative Defenses to the Plaintiff, John J. Brylski's Amended Complaint [Price Cty. Cir. Ct., Doc. 15] and Supplemental Allegations [Price Cty. Cir. Ct., Doc. 16] states as follows.

## ANSWER TO AMENDED COMPLAINT

### JURISDICTION AND VENUE

1. Plaintiff John J. Brylski is an adult resident of the State of Wisconsin, residing at W2275 State Hwy 22, Gillette, WI 54124. Previously residing in Price County.

**ANSWER:** Upon information and belief, Answering Defendant admits.

2. Defendant Brian S. Schmidt is an individual residing in the State of Wisconsin, serving as the elected Sheriff of Price County, with an official address of 164 Cherry St, Phillips, WI 54555. His personal address is 400 Birch St, Prentice, WI 54556. Defendant Schmidt is sued in both his official capacity as an agent of Price County and in his individual capacity.

**ANSWER:** Answering Defendant denies that Plaintiff has brought an official capacity claim against Schmidt or any claim against Price County. Answering Defendant admits that remaining allegations in this paragraph.

3. Defendant Robert M. Mihelich is an attorney licensed to practice law in the State of Wisconsin, with a principal place of business located at 2665 S. Moorland Rd, Suite 200, New Berlin, WI 53151. Defendant Mihelich is sued in his individual capacity.

**ANSWER:** Answering Defendant admits.

4. Venue and jurisdiction are proper in the Circuit Court of Price County pursuant to Wis. Stat. § 801.50 because the underlying transaction, prior litigation, execution of the disputed agreement, and systemic official actions occurred within Price County.

**ANSWER:** Answering Defendant admits that venue and jurisdiction were proper in the Circuit Court of Price County prior to the removal of this action to the United States District Court for the Western District of Wisconsin. Answering Defendant admits that jurisdiction and venue is proper in this Court.

FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5. Defendant Schmidt previously initiated an intentional tort/libel action against Plaintiff in the State of Wisconsin Circuit Court for Price County, Case No. 2022CV000059 (Brian S. Schmidt v. John Brylski).

**ANSWER:** Answering Defendant admits the allegations in this paragraph.

6. That action—which arose out of alleged social media commentary regarding Sheriff Schmidt—was officially dismissed with prejudice by court order on July 26, 2024 (Exhibit 7). Under well-established Wisconsin law, a dismissal with prejudice operates as a final judgment on the merits.

**ANSWER:** This paragraph contains conclusions of law to which no answer is required. Answering Defendant only admits that the case was dismissed with prejudice after a private and confidential settlement agreement was entered into by the parties. Answering Defendant denies that the remainder of this paragraph accurately or adequately describes the chain of events and therefore denies.

7. Prior to dismissal, Defendants Schmidt and Mihelich extracted Plaintiff's signature on a Confidential Settlement and Release Agreement on July 25, 2024 (Exhibit A), which included a forced scripted public apology ("Exhibit 1-A").

**ANSWER:** Answering Defendant only admits that a private and confidential settlement agreement was entered into by the parties and that Plaintiff signed that agreement, formulating an enforceable contract. Answering Defendant denies that the remainder of this paragraph accurately or adequately describes the chain of events and therefore denies.

8. Pursuant to Page 1, Paragraph 2 of the July 25, 2024 Confidential Settlement and Release Agreement (the "Agreement"), the parties explicitly agreed that the existence, terms, or contents of the Agreement must be kept strictly confidential.

**ANSWER:** Answering Defendant admits that a private and confidential settlement agreement was entered into by the parties, and that the terms of the Agreement required that that the parties would keep the existence, terms, or contents of the Agreement strictly confidential.

9. Paragraph 2 explicitly designates this confidentiality mandate as a "material term," strictly prohibiting disclosure to any third party and stipulating that any unauthorized disclosure constitutes an automatic, contractually defined material breach. Plaintiff's signature on the July 25, 2024 agreement was obtained under extreme duress, situational coercion, material fraud, and deceptive out-of-court maneuvers orchestrated by Defendant Mihelich and Defendant Schmidt.

**ANSWER:** Answering Defendant only admits that a private and confidential settlement agreement was entered into by the parties. Answering Defendant denies that the remainder of this paragraph accurately or adequately describes the chain of events and therefore denies.

10. On July 22, 2024, at 9:24 PM, Plaintiff explicitly informed Defendants via written discovery correspondence (Exhibit 2) that a critical defense witness, Tammy Hastings, had voluntarily come forward with a video statement detailing official misconduct.

**ANSWER:** Answering Defendant denies that this paragraph accurately or adequately describes the chain of events and therefore denies.

11. To protect the well-being of the individuals involved and to allow his wife, Amy, to "relax" free from the stress of litigation (Exhibit 2), Plaintiff proactively attempted to minimize harm to all involved families and suggested that Sheriff Schmidt address his actions honorably by apologizing to the actual victims.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's actions and motivations and therefore denies. To the extent a responsive pleading is required for the remainder of this paragraph, Answering Defendant denies that the remainder of this paragraph accurately or adequately describes the chain of events and therefore denies.

12. Plaintiff explicitly stated in his July 22 correspondence that Schmidt owed an apology to Tammy Hastings (Exhibit 12, Exhibit 14), Lisa Talley Decker (Exhibit 9), Jane Doe D (Exhibit 13), Andrea Palas (Exhibit 10, Exhibit 15), and his own daughter.

**ANSWER:** Answering Defendant denies that this paragraph accurately or adequately describes the chain of events and therefore denies.

13. In direct response, on July 23, 2024, via email (Exhibit 3), Defendant Mihelich completely bypassed proper legal discovery channels to explicitly threaten to depose Plaintiff's completely uninvolved spouse, Amy Brylski, for the sole, bad-faith purpose of family harassment.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

14. Concurrently, Defendants completed and transmitted an unfiled Subpoena Duces Tecum (Exhibit 3) and threatened the immediate public dissemination of Plaintiff's entire private employment file across social media platforms to inflict catastrophic personal and professional ruin.

**ANSWER:** Answering Defendant denies that this paragraph accurately or adequately describes the chain of events and therefore denies.

15. Furthermore, on July 23, 2024, Defendant Mihelich flatly stated as fact that he had personally spoken to defense witness Tammy Hastings and that she "readily informed me (Mihelich) that she had a consensual relationship with my client" and would testify to such under oath, forcing her to repudiate her recorded statements.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

16. Upon information and belief, this material representation of fact was completely false, manufactured, and made with the knowledge of its falsity to trick Plaintiff into believing his defense evidence was compromised.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

17. On July 24, 2024, Plaintiff explicitly rejected the veracity of Point #7 of the settlement draft via email (Exhibit 4), supported by prior communication draft demands showing a progression of coercive terms (Exhibit 5), stating it required "more discussion" and that signing it would force him to say something he "really didn't believe in" because physical evidence proved his prior commentary was factual.

**ANSWER:** Answering Defendant denies that this paragraph accurately or adequately describes the chain of events and therefore denies.

18. Bypassing further discussion, Defendants weaponized these extrajudicial threats of family ruin to force Plaintiff to sign a scripted statement declaring that Sheriff Schmidt "conducted himself honorably" and that prior statements were "not completely true."

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

19. This forced statement stood in direct, manufactured contradiction to the actual physical evidence Plaintiff possessed, including Tammy Hastings's verbatim written transcription of her recorded video statement (Exhibit 14) and Andrea Palas's signed, formal Notice of Written Interrogatories and notarized answers detailing official misconduct (Exhibit 15).

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

20. The underlying July 25, 2024 Confidential Settlement Agreement is fundamentally hostile to the public interest, as Defendants explicitly conditioned the dismissal of a civil lawsuit upon the forced withdrawal of a statutory open records request regarding the Sheriff's official internal discipline files and the suppression of audio/video recordings detailing official assault allegations.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

21. Specifically, the agreement sought to hide a shocking history of official misconduct spanning decades, which includes: A. Systemic Sexual Assault of a Minor (1990–1993): Wherein Defendant Schmidt, while acting as a Price County Deputy, leveraged his badge to repeatedly sexually assault a vulnerable minor victim, Lisa Talley Decker, beginning when she was fifteen (15) years of age (Exhibit 9).B. On-Duty Exploitation and Underage Custody (Approx. 1990–1991): Wherein Defendant Schmidt engaged in on-duty sexual relations with a nineteen (19) year old citizen, Tammy Hastings, in his official squad car, resulting in a pregnancy and subsequent birth of a child (Exhibit 12, Exhibit 14).C. Unlawful Traffic Stop and Record Destruction (Jan. 29, 2000): Wherein Defendant Schmidt initiated an arbitrary traffic stop on an eighteen (18) year old citizen, Andrea Palas, subjecting her to inappropriate interrogations and invasive searches (Exhibit 10, Exhibit 15). Upon information and belief, this official public record was subsequently, unlawfully destroyed or deleted from department files to falsely assert that zero career complaints existed against him. D. On-Duty Stalking and Harassment (Approx. 1990): Wherein Defendant Schmidt repeatedly engaged in the on-duty stalking of Jane Doe D, following her from her place of employment in his squad car (Exhibit 13).E. Classroom Grooming and Backseat Detention (Approx. 1997): Wherein Defendant Schmidt utilized his status as a DARE instructor to groom a fourteen (14) year old minor, Suzy Petersen, trapping her inside his official police vehicle and subjecting her to inappropriate physical touching, resulting in an independent private investigation and criminal trial (Exhibit 11).

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

22. On or about July 10, 2026, Defendant Mihelich issued a "Second Notice of Breach" letter (Exhibit 6) explicitly detailing an active intent to provide independent media outlet

Wisconsin Watch and reporter Matthew DeFour with the relevant terms and existence of the agreement.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

23. This intent to leak was actively executed and confirmed by Defendant Mihelich during a direct telephone conversation with Plaintiff on July 14, 2026, at 4:26 PM (originating from phone number 414-617-1356), during which Defendant Mihelich explicitly admitted that he was actively disclosing the parameters, existence, and contents of this confidential agreement to investigative journalists.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

24. Prior to this, Defendant Mihelich issued a written email notice of breach alongside an uncertified letter dated June 29, 2026, demanding a formal settlement payment of $25,000.00, which Plaintiff received via email on July 14, 2026, at 6:05 PM (Exhibit 8).

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

25. Defendant Mihelich committed a further, overt breach of the contract's confidentiality provision by accidentally mailing that heavily confidential, uncertified June 29, 2026 letter to Plaintiff’s old physical address. This letter arrived in Plaintiff's possession on July 24, 2026, at 2:00 PM in an unsealed envelope that appeared visibly tampered with and opened, exposing the private existence and terms of this confidential settlement to postal workers and the public stream of mail by mistake (Exhibit 8).

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

26. Following the disclosure of their own contractual breaches, Defendants engaged in aggressive, bad-faith escalation maneuvers. On July 23, 2026, at 8:59 PM, Defendant Mihelich placed a telephone call to the unrepresented Plaintiff (from phone number 414-617-1356), during which he completely abandoned the initial written parameters and explicitly threatened an inflated, uncontracted $300,000.00 lawsuit alongside a campaign to depose Plaintiff's spouse purely for the purpose of familial harassment.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

27. Defendant Mihelich further intentionally misrepresented material facts during said call by stating that third parties—specifically Tammy Hastings and Lisa Talley—were funding the legal fees for Plaintiff's actions. This statement was a deliberate misrepresentation under Wisconsin SCR 20:4.1, calculated to provoke, harass, and induce severe emotional distress, panic, and fear in an unrepresented litigant.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

27A. On August 5, 2026, Plaintiff formally filed a professional grievance and lawyer complaint against Defendant Mihelich with the State of Wisconsin Office of Lawyer Regulation (OLR), and concurrently submitted an official misconduct and public corruption report to the State of Wisconsin Department of Justice (WI DOJ) detailing the systemic bad-faith actions and threats perpetrated by Defendants.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

27B. On August 10, 2026, Plaintiff submitted a formal official misconduct and civil rights deprivation complaint to the Federal Bureau of Investigation (FBI) Milwaukee Field Office concerning the illegal extrajudicial threats, color of law violations, and extortion tactics utilized by Defendants.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

28. Plaintiff prepared the present action in direct response to these imminent, inflated $300,000.00 contract lawsuit threats to protect his family and livelihood from targeted, bad-faith legal retaliation.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

COUNT I (Declaratory Judgment - Wis. Stat. § 806.04
Against Defendant Sheriff Brian S. Schmidt)

29. Plaintiff incorporates and re-alleges paragraphs 1 through 28 of this Complaint as though fully set forth herein.

**ANSWER:** Answering Defendant reasserts his admissions and denials in paragraphs 1 through 28 as though more fully stated herein.

30. An active, justiciable controversy exists between Plaintiff and Defendant Sheriff Brian S. Schmidt concerning the validity and enforceability of the July 25, 2024 Confidential Settlement Agreement.

**ANSWER:** This paragraph contains conclusions of law to which no answer is required. To the extent a responsive pleading is required for this paragraph, Answering Defendant denies.

31. The agreement is completely void, invalid, and unenforceable as a matter of law because Plaintiff's consent was obtained through extreme duress, extortionate extrajudicial threats against his spouse, and material fraudulent misrepresentations regarding key defense witnesses.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

32. The agreement is further void as against public policy because its overriding intent and core consideration require the suppression of statutory open records transmissions, the obstruction of an active press investigation, and the concealment of evidence of official corruption, felonies, and criminal behavior involving an elected public official acting under color of law.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

33. Furthermore, to the extent any valid contract was formed, Defendant Schmidt completely shattered the agreement by committing prior material breaches. By accidentally mailing confidential settlement files through unsealed, unsecured mail to an outdated address, and deliberately leaking the parameters and contents of the agreement to reporters at Wisconsin Watch, Defendant Schmidt destroyed the core consideration of the contract.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

34. Under Wisconsin law, these prior material breaches completely frustrate the purpose of the agreement and legally excuse the Plaintiff from any subsequent performance or obligations under the contract. See Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 557 N.W.2d 67 (1996).

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

35. Because Defendant Schmidt has instituted a dispute rooted in a material breach of Paragraph 2, Plaintiff is contractually entitled to, and will actively seek, an order compelling Defendant Schmidt to pay 100% of Plaintiff's actual reasonable fees, costs, and expenses incurred

in bringing this action, pursuant to the mandatory fee-shifting provisions set forth in Paragraph 2, Paragraph 8, and Paragraph 17 of the Agreement (Exhibit A).

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

COUNT II (Abuse of Process
Against Defendants Sheriff Brian S. Schmidt and Attorney Robert M. Mihelich)

36. Plaintiff incorporates and re-alleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

**ANSWER:** Answering Defendant reasserts his admissions and denials in paragraphs 1-35 as though more fully stated herein.

37. The tort of abuse of process under Wisconsin law requires an intentional perversion of a legal procedure to accomplish a collateral, improper purpose for which the process was not designed. See Schmit v. Klumpyan, 2003 WI App 107, 264 Wis. 2d 414, 663 N.W.2d 331.

**ANSWER:** This paragraph contains conclusions of law to which no answer is required. To the extent a responsive pleading is required for this paragraph, Answering Defendant denies.

38. Defendants willfully perverted the legal machinery of the prior circuit court action by manufacturing unfiled Subpoenas Duces Tecum and issuing repeated, bad-faith deposition notices targeting Plaintiff's completely uninvolved spouse, Amy Brylski, who possessed zero relevant knowledge or connection to the dispute.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

39. These procedural tools were not deployed for any legitimate, authorized purpose within the regular conduct of a civil lawsuit.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

40. Instead, Defendants utilized these extrajudicial tools for an improper, collateral, and extortionate motive: to overbear the will of an unrepresented litigant, inflict severe family

trauma, force the execution of a manufactured public apology, and suppress physical evidence of official corruption.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

41. Defendants have further perverted the legal process by threatening an imminent, inflated, and uncontracted $300,000.00 lawsuit as an offensive tool of intimidation to silence a pro se citizen from discussing matters of urgent public concern and to punish him for defensive legal expenditures.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

42. As a direct and proximate result of Defendants' perversion of the legal process, Plaintiff has suffered devastating emotional distress, professional and reputational harm, and substantial economic damages.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

COUNT III (Intentional Infliction of Emotional Distress (IIED)
Against Defendants Sheriff Brian S. Schmidt and Attorney Robert M. Mihelich)

43. Plaintiff incorporates and re-alleges paragraphs 1 through 42 of this Complaint as though fully set forth herein.

**ANSWER:** Answering Defendant reasserts his admissions and denials in paragraphs 1 through 42 as though more fully stated herein.

44. The conduct of Defendants immediately preceding the execution of the July 25, 2024 agreement, and maliciously renewed and escalated during the phone call on July 23, 2026, was extreme, outrageous, and exceeded all bounds of human decency.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

45. Defendants targeted an unrepresented citizen by threatening an uninvolved spouse with harassing depositions, manufacturing false witness statements, concealing official files,

exposing confidential data to the public mail stream, and issuing deceptive $300,000.00 threats built upon fabricated claims of third-party funding.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

46. This conduct completely bars Defendants from seeking equitable or contractual relief under the doctrine of unclean hands, as a court will deny relief to a litigant guilty of bad faith, fraud, or unconscionable conduct in the transaction at issue. See Security Pacific National Bank v. Ginkowski, 140 Wis. 2d 332, 410 N.W.2d 589 (Ct. App. 1987).

**ANSWER:** This paragraph contains conclusions of law to which no answer is required. To the extent a responsive pleading is required for this paragraph, Answering Defendant denies.

47. Defendants acted with intentional or reckless disregard for the absolute certainty of causing severe emotional distress, panic, and fear to Plaintiff and his family.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

48. As a direct and proximate result of this targeted harassment, inversion of accountability, deception, and duress, Plaintiff suffered severe emotional distress, anxiety, acute physical stress, and substantial disruption to his personal and professional life.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

COUNT IV (First Amendment Retaliation under 42 U.S.C. § 1983 –
Against Defendant Sheriff Brian S. Schmidt)

49. Plaintiff incorporates and re-alleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

**ANSWER:** Answering Defendant reasserts his admissions and denials in paragraphs 1 through 48 as though more fully stated herein.

50. At all times relevant, Defendant Schmidt acted under color of state law in his official capacity as the elected Sheriff of Price County, exercising the state-delegated authority, resources, and disciplinary control of his office.

**ANSWER:** This paragraph contains conclusions of law to which no answer is required. To the extent a responsive pleading is required for this paragraph, Answering Defendant denies.

51. Plaintiff engaged in constitutionally protected speech and activity under the First Amendment of the United States Constitution and Article I, Section 3 of the Wisconsin Constitution by filing statutory open records requests and maintaining transparency actions regarding the Sheriff's official internal discipline and employment files.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

52. Defendant Schmidt, acting under color of law, issued explicit ultimatums and initiated a bad-faith campaign of personal, financial, and familial ruin specifically designed to punish, bankrupt, and silence Plaintiff for his protected First Amendment expressions and to completely prevent the public from discovering his history of official misconduct.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

53. Defendant Schmidt weaponized the power of his public office and the judicial system to extort a private citizen into abandoning statutory constitutional rights, attempting to force the publication of untruthful statements and completely prevent the public from discovering a decades-long history of official predation, criminal trials, on-duty sexual assaults, and the unlawful destruction of public records.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

54. Defendant Schmidt's actions would deter a person of ordinary firmness from continuing to engage in constitutionally protected speech, petitioning, and transparency activities.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

55. As a direct and proximate result of Defendant Schmidt's retaliatory conduct under color of law, Plaintiff has suffered a chilling effect on his constitutional rights, deep emotional trauma, and severe economic harm.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

**ANSWER TO SUPPLEMENTAL ALLEGATIONS**

19A. The physical evidence of official misconduct in Plaintiff's possession prior to the execution of the coerced July 25, 2024 Agreement included extensive, voluntary, and contemporaneous written statements from witness and victim Lisa Talley Decker (operating via Facebook under the profile name L.S. Decker).

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19B. In written correspondence transmitted to Plaintiff on January 21, 2024, Ms. Decker disclosed that Defendant Schmidt initially pursued her openly, which included contacting her by phone and stopping by her parents' residence while on active duty. Ms. Decker further detailed that after Defendant Schmidt's mother objected to the relationship based on external rumors, Defendant Schmidt's behavior shifted into an abusive and deeply secretive dynamic. Ms. Decker stated that Defendant Schmidt would frequently utilize his active law enforcement shifts to compel her to meet him, during which times he became physically and sexually aggressive.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19C. Ms. Decker's correspondence further detailed a historical pattern of evidence suppression and retention executed by the Price County Sheriff's Department under then-Sheriff

Richard Heitkemper. Specifically, Ms. Decker was required by the department to turn over her personal written journals—which contained her innermost thoughts and documentation regarding her interactions with Defendant Schmidt—for review. These personal journals were permanently retained by the department and were never returned to her.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19D. Additionally, Ms. Decker detailed that years later, after she was married, one of the traffic citations underlying her initial contact with Defendant Schmidt resulted in her serving jail time at the Price County Jail. Upon being booked into the facility, her personal property—specifically her wedding rings—was checked into official custody, went missing within the facility, and was never returned to her possession.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19E. In subsequent written correspondence dated January 24, 2024, Ms. Decker reinforced that her original interactions with the department arose strictly because she "wanted some help with these tickets," and that she did not realize at the time the insidious nature of the department's total failure to intervene. Objecting to Defendant Schmidt's subsequent rise to higher public office, she explicitly stated:" He knew what he did, not only to me but others and I'm sure there's more... So not only did he take zero accountability... he was so indulgent and arrogant that he had gotten away with this [that] he then puts himself in position with even more power, any elected position at that because he is so Superior to all of us that he feels that he won.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19F. On January 25, 2024, Ms. Decker further detailed the profound, long-term psychological destruction caused by escaping Defendant Schmidt's control, noting that everything she endured to get away from "his grip" left her "completely and entirely alone in the world" dealing with lasting "abandonment and shame." Emphasizing her drive to hold him publicly accountable, she wrote:

> "The more I think about this with him the more and more angry I am that he is feeling that he has empirical rules superiority that he is so far above any consequences for his actions that he would run and put himself into a elected office in a position where he is not only expected to protect and serve but he is the sheriff in charge... I don't think I have ever felt more driven to hold him accountable on a public forum."

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19G. The existence of these comprehensive, dated, and explicit witness accounts from an actual victim demonstrates that Plaintiff's prior out-of-court commentary regarding Defendant Schmidt was anchored in substantial factual truth. Forcing Plaintiff to sign a scripted declaration stating that Schmidt "conducted himself honorably" under extrajudicial threats of family ruin therefore constitutes a manufactured falsehood extracted under extreme duress, fraud, and situational coercion.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

19H. Soon after Plaintiff reluctantly published the mandated public apology statement on his personal Facebook page pursuant to the coerced terms of the July 25, 2024 Agreement, defense witness Tammy Hastings published a public comment directly beneath the post, explicitly stating that the apology had been forced upon Plaintiff and confirming that Plaintiff's prior statements regarding Defendant Schmidt's official misconduct were entirely true.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19I. The publication of this truthful third-party commentary caused Defendants to immediately engage in bad-faith panic and aggressive extrajudicial retaliation. Defendant Schmidt threatened to refuse to finalize the pending dismissal of Case No. 2022CV000059—which was ultimately dismissed with prejudice on July 26, 2024—and explicitly threatened to renew and protract the lawsuit unless the information was immediately suppressed.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

19J. Concurrently, Defendant Attorney Robert M. Mihelich transmitted written email correspondence to the unrepresented Plaintiff, explicitly stating that he had personally reviewed Tammy Hastings's comment and demanding its immediate removal. Defendant Mihelich explicitly threatened that if the post and comment were not deleted, he would refuse to dismiss the case and would immediately file a secondary lawsuit against Plaintiff for breach of contract, forcing Plaintiff to remove the post under severe duress.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19K. In furtherance of this continuous pattern of witness suppression and intimidation, Defendant Mihelich placed a telephone call to Plaintiff, during which he explicitly threatened that if Tammy Hastings ever publicly disseminated her recorded video statement detailing Defendant Schmidt's official misconduct, Defendant Mihelich would "sue the heck out of her" and publicly expose her as a liar.

**ANSWER:** Answering Defendant is without knowledge or information sufficient to form a belief as to this paragraph and therefore denies.

19L. Furthermore, as part of their systemic effort to weaponize the machinery of law enforcement for personal legal disputes, Defendants utilized an active-duty Price County Deputy Sheriff—acting under the direct employment, command, and authority of Defendant Sheriff Schmidt—to execute service of process on Plaintiff.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

19M. The utilization of a subordinate uniformed officer to serve papers for their boss's private civil lawsuit constitutes a flagrant conflict of interest, a violation of the neutral service mandates set forth in Wis. Stat. § 801.10(1), and an illegal, extrajudicial intimidation tactic executed under color of law to overbear the will of a private citizen.

**ANSWER:** Answering Defendant denies the allegations in this paragraph.

**As to any allegation of fact that has not been specifically admitted or denied, Answering Defendant denies.**

AFFIRMATIVE DEFENSES

1. Plaintiff failed to state a claim upon which relief can be granted.

2. Plaintiff’s claims may be barred, in whole or in part, because of Plaintiff’s failure to exhaust administrative remedies.

3. Plaintiff’s claims may be premature and not ripe.

4. Plaintiff’s claims may be moot.

5. Plaintiff’s Complaint may be barred, in whole or in part, by the applicable statute of limitations.

6. Plaintiff has failed to mitigate damages, if any.

7. Plaintiff’s claims may be barred by the doctrine of estoppel.

8. Plaintiff’s claims may be barred by the doctrine of unclean hands.

9. Plaintiff may have waived some or all of his claims.

10. Any damages sustained by Plaintiff were caused by intervening and/or superseding causes over which Answering Defendant had no control, including but not limited to the acts or omissions of the Plaintiff.

11. Answering Defendant is entitled to absolute, qualified, or other form of immunity.

12. There is no policy authorizing the violation of any individual's rights pursuant to the United States Constitution and, therefore, Plaintiff has failed to state a federal claim with regard to any municipal entity defendant or individual defendant acting in his official capacity.

13. At all times Answering Defendant has operated within the applicable and controlling law, or within a reasonable interpretation and understanding of the law and has not violated any federal laws or constitutional rights of Plaintiff.

14. Plaintiff's damages, if any, may be subject to various applicable limitations or exclusions, including the damages caps of Wis. Stat. § 893.80.

15. Plaintiff may have failed to comply with the notice of claim provisions of Wis. Stat. § 893.80.

16. Plaintiff's claims are barred in whole or part by issue preclusion and/or claim preclusion.

17. Plaintiff was not denied any protections guaranteed by the Constitution.

18. Plaintiff did not engage in activity protected by the First Amendment.

19. Plaintiff did not sustain any deprivations that would likely deter First Amendment activity in the future.

20. Plaintiff cannot establish that any protected First Amendment activity caused an alleged deprivation.

21. Answering Defendant would have taken the same action regardless of any alleged protected activity.

22. To the extent Plaintiff claims punitive damages, such claims are limited and/or barred by the applicable state constitution, by the Fourteenth, Fifth and Eighth Amendments to the United States Constitution and by the laws of the United States and the State of Wisconsin.

23. At no time material hereto did Answering Defendant act in bad faith or in a willful, wanton, outrageous, reckless and/or malicious manner.

24. Any other affirmative defenses uncovered through the course of discovery and litigation of this matter.

WHEREFORE, Answering Defendant respectfully requests that the Court: enter judgment in his favor and against Plaintiff, dismissing Plaintiff's Amended Complaint with prejudice and in its entirety; deny each and every demand, claim, and prayer for relief contained in Plaintiff's Amended Complaint; award to Answering Defendant his attorneys' fees and costs; and grant such other and further relief as the Court may deem just and proper.

**COUNTERCLAIM**

For his Counterclaim against Plaintiff, Counterclaim Plaintiff, Schmidt, states as follows:

1. Schmidt incorporates by reference Plaintiff's allegations and Answering Defendant's responses to those allegations set forth in Plaintiff's Amended Complaint and Supplemental allegations.

2. On July 25, 2024, Schmidt and Plaintiff entered into a confidential settlement and release agreement.

3. As part of the confidential settlement and release agreement, Schmidt agreed to dismiss the lawsuit he filed against Plaintiff in Price County Circuit Court Case No. 2022-cv-59

in exchange for, among other things, removing certain defamatory statements from his public social media pages.

4. Pursuant to Section 2 of the confidential settlement and release agreement, the terms of the agreement were made confidential and the terms and the parties agreed to keep the terms and contents of the agreement confidential.

5. Section 5 of the confidential settlement and release agreement contains a mutual no disparagement provision that provides that:

> Both Parties agree that in order to fully and forever resolve this Lawsuit, and to avoid any further disputes between them, the Parties agree not to engage in any disparaging, illegal, harassing, intimidating, threatening or retaliatory conduct, comments, action or behavior (whether in person or via telephone, mail, email, social media posts, or otherwise) with respect to the other Party, including the other Parties' immediate family members. In particular, each Party agrees not to do or say anything, directly or indirectly, which criticizes or disparages the other Party and their immediate family; or which disrupts, impairs, or harms the other Parties' reputation with their employer or the public, including orally, in writing, via social media or otherwise. Both parties also agree that in order to effectuate this provision, they will not publish or provide to any third parties the contents of each other's employment file(s). Any violation of the obligations of this Paragraph by any Parties' spokesperson shall be deemed to be a violation by the Party. The Parties agree that this is a material term of this Agreement.

6. Pursuant Section 6e of the confidential settlement and release agreement, Plaintiff also agreed that he would not further publish or release public videos, statements, writings, or recordings of certain third parties regarding or relating any allegations against Schmidt.

7. On August 12, 2026, Plaintiff filed this lawsuit in the Price County Circuit Court.

8. As part of the lawsuit, Plaintiff attached multiple exhibits containing information that directly and indirectly, criticizes or disparages Schmidt and which disrupts, impairs, or harms Schmidt's reputation with his employer and the public.

9. The filing of the exhibits also violates the confidential settlement and release agreement's prohibition on further publication of these types of information.

10. The allegations in Plaintiff's complaint and amended complaint about Schimidt, as reproduced above, including the allegations related to the underlying facts and circumstances that led to the confidential settlement and release agreement, are written statements that tend to harm the reputation of Schmidt in the community.

11. Upon information and belief, Plaintiff has also disseminated the information contained the complaint and amended complaint and the exhibits, including the confidential settlement and release agreement, to third-parties not authorized to receive such information.

**Counterclaim Count I**
**Breach of the Confidential Settlement and Release Agreement**

12. Schmidt realleges and restates all preceding paragraphs as though more fully set forth herein.

13. The confidential settlement and release agreement is a binding contract between Schmidt and Plaintiff supported by consideration.

14. Schmidt performed all obligations under the confidential settlement and release agreement, including dismissing Price County Circuit Court Case No. 2022-cv-59.

15. Plaintiff breached the confidential settlement and release agreement by filing this lawsuit and filing the exhibits as public records without redaction and without sealing those documents.

16. The public release of the information contained in the complaint and exhibits has continued to harm the reputation of Schmidt and caused him damages in an amount unknown at this time

17. Pursuant to the confidential settlement and release agreement, if any litigation is instituted to enforce the agreement or remedy a breach of the agreement, the prevailing party in any such action shall recover its actual reasonable attorney fees, costs, and expenses incurred.

**Counterclaim Count II**
**Defamation (Libel)**

18. Schmift realleges and restates all the preceding paragraphs as though more fully set forth herein.

19. By filing this lawsuit and filing the exhibits as public records without redaction and without sealing those documents Plaintiff has published a false statement to third parties.

20. By filing this information as a public record, Plaintiff has published these false statements to third parties.

21. Upon information and belief, Plaintiff has also provided the information directly to other third parties.

22. The information contained in the complaint and the exhibits tends to harm Schmidt's reputation as to lower him in the estimation of the community or deter third persons from associating or dealing with him; namely they include grave accusations of misconduct by a public official.

23. The defamatory statements published by Plaintiff were not pertinent or relevant, nor did they bear a proper relationship to the issues of the litigation – breach of contract.

24. Because the defamatory statements published by Plaintiff were not pertinent or relevant, and did they bear a proper relationship to the issues of the litigation, Plaintiff is not entitled to invoke the absolute privilege for defamatory statements made by parties, witnesses, or counsel during the course of judicial or quasi-judicial proceedings.

**Counterclaim Count III**
**Abuse of Process**

25. Schmift realleges and restates all the preceding paragraphs as though more fully set forth herein.

26. Plaintiff filed the complaint and amended complaint, and all documents attached thereto, as a public document for the express purpose of defaming Schmidt.

27. Using a civil lawsuit to defame another person is a form of legal process that is not proper in the regular course of proceedings.

28. Plaintiff filed the complaint and amended complaint, and all documents attached thereto for the purpose of broadcasting information that he was contractually barred from broadcasting and to defame Schmidt. Plaintiff's filing of the complaint, amended complaint, and all documents attached thereto, was not for any legitimate process for which a civil lawsuit was designed.

**Counterclaim Count IV**
**Punitive Damages**

29. Schmidt realleges and restates all the preceding paragraphs as though more fully set forth herein.

30. Plaintiff's actions towards Schmidt in utilizing a civil lawsuit to publish defamatory statements in violation of the confidential settlement and release agreement was done maliciously toward Schmidt in an intentional disregard for the rights of Schmidt.

31. Plaintiff's act and course of conduct was deliberate as he acted with a purpose to disregard Schmidt's rights, or he was aware that his conduct was substantially certain or practically certain to result in Schmidt's rights being disregarded

32. Plaintiff's conduct actually disregarded Schmidt's right to be free from the publication of defamatory statements and free from abusive civil lawsuits, filed for the purpose of defaming and harassing him.

33. Plaintiff's act and conduct was sufficiently aggravated to warrant punishment by punitive damages as he filed a civil lawsuit for the express purpose publishing defamatory statement about Schmidt.

## PRAYER FOR RELIEF

WHEREFORE, Schmidt demands judgment against Plaintiff and respectfully requests the Court issue an Order:

1. Awarding Schmidt compensatory damages in an amount to be determined at trial.

2. Awarding Schmidt punitive damages.

3. Awarding Schmidt his actual reasonable attorney fees, costs, and expenses incurred.

4. Enforcing the confidential settlement and release agreement by enjoining Plaintiff from violating the agreement or further publishing defamatory information as set forth in the Agreement.

5. Granting a trial by jury.

6. Awarding Schmidt any and all other relief, together with prejudgment interest, costs, and disbursements as is deemed equitable and appropriate by the Court.

Dated this 18th Day of September, 2026.

STADLER SACKS LLC
Attorneys for Defendant and Counterclaim Plaintiff
Brian Schmidt

By: */s/ Ronald S. Stadler*
Jonathan E. Sacks
State Bar No. 1103204
Ronald S. Stadler
State Bar No. 1017450

303 North Main Street
West Bend, WI 53095
telephone: 262-304-0610
e-mail: jes@stadlersacks.com
rss@stadlersacks.com