U.S. DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
SEP 29 2026
FILED/REC'D
CLERK OF COURT

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN J. BRYLSKI, Plaintiff,
v. CASE NO.: 3:26-cv-00945-JDP
BRIAN SCHMIDT and Chief Judge James D. Peterson
ROBERT M. MIHELICH, Defendants. Magistrate Judge Anita Marie Boor

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT ROBERT M. MIHELICH'S MOTION TO DISMISS**

Now comes the Plaintiff, John J. Brylski, proceeding Pro Se, and respectfully submits this Brief in Opposition to Co-Defendant Attorney Robert M. Mihelich's Motion to Dismiss filed pursuant to **Federal Rule of Civil Procedure 12(b)(6)**. For the reasons set forth below, Plaintiff respectfully requests that this Court deny Defendant Mihelich's motion in its entirety and permit this action to proceed immediately to formal discovery.

**PRELIMINARY STATEMENT**

This civil rights action does not seek, as Defendant Mihelich's brief disingenuously asserts, "to impose liability on a lawyer for representing his client" (ECF No. 9, p. 1). Rather, this action seeks fundamental accountability for an attorney who repeatedly stepped completely outside the boundaries of legitimate legal advocacy to execute a malicious, extrajudicial campaign of fraud, situational coercion, and verbal extortion against an unrepresented citizen.

Defendant Mihelich attempts to erect a blanket, impenetrable wall of "attorney immunity" and "litigation privilege" to sanitize his actions. However, long-standing Wisconsin common law and federal constitutional precedent dictate that a law license is not a blank check to commit intentional torts, misuse legal instruments, or enforce an unconstitutional contract designed to censor public interest evidence. Because the First Amended Complaint sets forth detailed, plausible factual allegations showing that Mihelich engaged in malicious and extrajudicial behavior to extort an unconscionable agreement, his motion to dismiss must be denied.

**LEGAL STANDARD UNDER RULE 12(b)(6)**

To survive a motion to dismiss under **Federal Rule of Civil Procedure 12(b)(6)**, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2000)).

Crucially, in resolving a Rule 12(b)(6) motion, this Court is required to "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Hall. 2011). A defendant cannot utilize a preliminary motion to dismiss to challenge the underlying truth of a plaintiff's facts or argue their own version of the narrative. If the four corners of the complaint allege facts that allow the court to draw a reasonable inference of liability, the motion must be denied, and the parties must proceed to discovery.

**ARGUMENT**

## I. DEFENDANT MIHELICH IS STRIPPED OF ATTORNEY IMMUNITY UNDER THE LANDMARK STRID V. CONVERSE PRECEDENT BECAUSE THE COMPLAINT PLAUSIBLY ALLEGES MALICIOUS, FRAUDULENT, AND INTENTIONAL TORTIOUS CONDUCT.

Defendant Mihelich asserts on Page 4 of his brief that because his actions occurred during his representation of Sheriff Schmidt, he is completely immune from third-party civil liability. This position is a flat misstatement of Wisconsin law.

The Wisconsin Supreme Court has long established that while an attorney is generally immune from suits brought by an opposing party for simple negligence, that immunity is instantly pierced if the lawyer engages in malicious, fraudulent, or intentional tortious behavior. In *Strid v. Converse*, 111 Wis. 2d 418, 331 N.W.2d 350 (1983)—the very case Defendant was forced to cite on Page 5 of his brief—the Supreme Court explicitly ruled:

"The immunity from liability to third parties extends to an attorney who pursues in good faith his or her client's interests on a matter fairly debatable in the law. However, the immunity does not apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled." *Id.* at 429–30.

Plaintiff's First Amended Complaint easily satisfies the *Strid* standard to pierce Mihelich's immunity shield. The complaint does not challenge routine courtroom advocacy; it details a calculated pattern of intentional torts. Specifically, the complaint alleges that Mihelich manufactured an unfiled, unissued Subpoena Duces Tecum and threatened an invasive deposition

against Plaintiff's completely uninvolved spouse, Amy Brylski, solely as an extrajudicial bludgeon to leverage a settlement (Am. Compl. ¶¶ 13–14).

Furthermore, the complaint details that Mihelich actively pressured witness Tammy Hastings to alter and repudiate her recorded statements regarding official sexual misconduct (*Id.* ¶ 15). The direct purpose of this malicious behavior was to extort an unconscionable speech-suppressing contract to hide a public official's disciplinary history—something to which his client was "not justly entitled." Because these intentional, bad-faith acts are accepted as completely true at this phase, attorney immunity is legally inapplicable under *Strid*.

## II. WISCONSIN'S JUDICIAL LITIGATION PRIVILEGE DOES NOT IMMUNIZE EXTRAJUDICIAL VERBAL THREATS AND OUT-OF-COURT EXTORTION.

Defendant Mihelich next argues that his conduct is entirely insulated by Wisconsin's absolute litigation privilege. This argument fundamentally confuses a narrow speech privilege with absolute protection for extrajudicial conduct.

Wisconsin's litigation privilege protects parties and counsel from civil liability for statements made within the course of judicial proceedings to foster open, uninhibited advocacy inside a courtroom. *Radue v. Dill*, 74 Wis. 2d 239, 248 N.W.2d 448 (1974). However, the Seventh Circuit and Wisconsin courts have never extended this privilege to immunize extrajudicial extortion or intentional fraud executed completely outside the judicial machinery.

As set forth in the complaint, the core of Plaintiff's Abuse of Process (Count II) and IIED (Count III) claims rests heavily upon a high-pressure July 23, 2026 telephone call (Am. Compl. ¶¶ 26–27). During this out-of-court conversation, Defendant Mihelich stepped entirely outside of

regular judicial conduct to verbally threaten an unrepresented citizen with an uncontracted $300,000.00 debt, while intentionally fabricating material facts under SCR 20:4.1 by asserting that third parties were "financially backing" Plaintiff's transparency activities.

An out-of-court telephone conversation used to verbally panic and extract money from a pro se citizen is an extrajudicial action. It does not occur within a brief, a deposition, or a courtroom proceeding, and it bears zero proper relationship to any active judicial file. Because the privilege cannot be used to sanitize out-of-court verbal extortion, his privilege arguments fail as a matter of law.

**III. THE UNDERLYING AGREEMENT IS CONSTITUTIONALLY VOID UNDER THE LANDMARK OVERBEY DOCTRINE, EVAPORATING ANY LEGITIMATE "LITIGATION OBJECTIVE."**

Throughout his brief, Defendant Mihelich attempts to sanitize his 2026 harassment campaign by framing his actions as standard, legitimate "litigation objectives" to enforce the terms of the 2024 Confidential Settlement Agreement (ECF No. 9, p. 8). This defense rests on the assumption that the 2024 contract is a valid, enforceable legal instrument. It is not.

Under the landmark First Amendment precedent *Overbey v. Mayor and City Council of Baltimore*, 930 F.3d 215 (4th Cir. 2019), confidentiality, non-disparagement, and "gag" clauses embedded within settlement agreements involving government entities or elected officials acting under color of law are fundamentally unconstitutional and void as a matter of public policy when weaponized to suppress a citizen's right to speak out about official misconduct or petition the government.

The 2024 contract at issue explicitly conditioned the dismissal of a private lawsuit upon the forced withdrawal of statutory open records requests (Section 6(c)), the permanent dismissal of a public transparency mandamus action (Section 6(d)), and a permanent publication ban regarding evidence of official misconduct, active-duty sexual aggression, and criminal trials involving an elected Sheriff (Section 6(e)).

Under *Overbey*, an elected public official cannot contractually buy a private citizen's silence regarding public corruption or weaponize the courts to suppress open records transparency files. Because the underlying contract is inherently unconstitutional and void against public policy from its inception, Defendant Mihelich cannot claim he was pursuing a "legitimate litigation objective." An attorney cannot claim immunity for using extrajudicial threats to enforce an illegal instrument of government censorship.

## IV. THE COMPLAINT SUFFICIENTLY ALLEGES ALL ESSENTIAL ELEMENTS FOR BOTH ABUSE OF PROCESS AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Finally, Mihelich's claim that Plaintiff fails to allege "plausible facts" on the merits is completely contradicted by the detailed four corners of the First Amended Complaint.

To state a claim for Abuse of Process, a plaintiff must allege: (1) a willful act in the use of legal process not proper in the regular conduct of proceedings, and (2) an ulterior motive. *Brownsell v. Klawitter*, 102 Wis. 2d 108, 115 (1981). Plaintiff has explicitly alleged that Mihelich bypassed the court docket to manufacture an unfiled subpoena and deposition notices targeting his spouse, and used a fabricated $300,000.00 verbal threat to overbear Plaintiff's will. The ulterior motive—

forcing the suppression of public records and protecting the Sheriff's political office—is detailed extensively, perfectly satisfying the *Brownsell* standard.

To state a claim for Intentional Infliction of Emotional Distress (IIED), a plaintiff must allege that the defendant's conduct was extreme and outrageous, intentional, and caused severe emotional distress. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675 (1978). Bypassing the court system to threaten an innocent, uninvolved spouse with invasive legal processing, fabricating financial funding claims, and threatening an unrepresented citizen with an uncontracted $300,000.00 liability to force a false public apology script easily crosses the boundary of standard legal advocacy. It constitutes extreme and outrageous behavior that no civilized community should tolerate. Because intent and the severity of distress are questions of fact that must be developed during discovery, dismissal at this threshold phase is completely improper.

**CONCLUSION**

WHEREFORE, the Plaintiff, John J. Brylski, respectfully requests that this Court enter an Order DENYING Defendant Robert M. Mihelich's Motion to Dismiss in its entirety, ordering the Defendants to file their formal responsive answers to the First Amended Complaint within fourteen (14) days, and permitting this action to move immediately into the formal discovery phase under the federal rules.

Dated this 21st Day of September, 2026.

Respectfully submitted,



**John J. Brylski**, Plaintiff Pro Se
W2275 State Hwy 22
Gillet, WI 54124
Telephone: 920-540-2118
Email: jasnowshoe@aol.com