UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHN J. BRYLSKI,
Plaintiff,
v. Case No. 3:26-cv-00945-jdp
PRICE COUNTY SHERIFF BRIAN SCHMIDT, and District Judge James D. Peterson
ROBERT M. MIHELICH, Magistrate Judge Anita Marie Boor
Defendants.

PLAINTIFF’S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANT ROBERT M. MIHELICH’S MOTION TO DISMISS

Now comes the Plaintiff, John J. Brylski, proceeding Pro Se, and respectfully submits this Consolidated Brief in Opposition to Defendant Attorney Robert M. Mihelich’s Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to the Court's Text-Only Order (Dkt. 20) directing consolidation of the record, this single filing unites Plaintiff's legal arguments, constitutional challenges, and active multi-part evidentiary exhibits (Exhibits 1–24), integrating the filings and supplemental narratives previously separated at Docket Entries 15, 16, and 17. For the reasons set forth below, Plaintiff respectfully requests that this Court deny Defendant Mihelich’s motion in its entirety and permit this civil rights action to proceed immediately to formal discovery.

PRELIMINARY STATEMENT

This civil rights action does not seek, as Defendant Mihelich’s brief disingenuously asserts, "to impose liability on a lawyer for representing his client." Rather, this action seeks fundamental accountability for an attorney who repeatedly stepped completely outside the boundaries of

legitimate legal advocacy to execute a malicious, extrajudicial campaign of fraud, situational coercion, physical and digital record-tampering, and verbal extortion against an unrepresented citizen.

Defendant Mihelich attempts to erect a blanket, impenetrable wall of "attorney immunity" and "litigation privilege" to sanitize his actions. However, long-standing Wisconsin common law and federal constitutional precedent dictate that a law license is not a blank check to commit intentional torts, misuse legal instruments, or enforce an unconstitutional contract designed to censor public interest evidence. Because the First Amended Complaint sets forth detailed, plausible factual allegations showing that Mihelich engaged in malicious and extrajudicial behavior to extort an unconscionable agreement and subsequently execute bad-faith threats, his motion to dismiss must be denied.

LEGAL STANDARD UNDER RULE 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2000)).

Crucially, in resolving a Rule 12(b)(6) motion, this Court is required to "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff’s favor." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011). A defendant cannot utilize a preliminary motion to

dismiss to challenge the underlying truth of a plaintiff's facts or argue their own version of the narrative. If the four corners of the complaint allege facts that allow the court to draw a reasonable inference of liability, the motion must be denied, and the parties must proceed to discovery.

ARGUMENT

I. DEFENDANT MIHELICH IS STRIPPED OF ATTORNEY IMMUNITY UNDER THE LANDMARK STRID V. CONVERSE PRECEDENT BECAUSE THE COMPLAINT PLAUSIBLY ALLEGES MALICIOUS, FRAUDULENT, AND INTENTIONAL TORTIOUS CONDUCT.

Defendant Mihelich asserts that because his actions occurred during his representation of Sheriff Schmidt, he is completely immune from third-party civil liability. This position is a flat misstatement of Wisconsin law.

The Wisconsin Supreme Court has long established that while an attorney is generally immune from suits brought by an opposing party for simple negligence, that immunity is instantly pierced if the lawyer engages in malicious, fraudulent, or intentional tortious behavior. In Strid v. Converse, 111 Wis. 2d 418, 331 N.W.2d 350 (1983), the Supreme Court explicitly ruled:

"The immunity from liability to third parties extends to an attorney who pursues in good faith his or her client's interests on a matter fairly debatable in the law. However, the immunity does not

apply when the attorney acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled." Id. at 429–30.

Plaintiff’s First Amended Complaint easily satisfies the Strid standard to pierce Mihelich’s immunity shield. The complaint does not challenge routine courtroom advocacy; it details a calculated pattern of intentional torts. Specifically, the complaint alleges that Mihelich manufactured an unfiled, unissued Subpoena Duces Tecum and threatened an invasive deposition against Plaintiff’s completely uninvolved spouse, Amy Brylski, solely as an extrajudicial bludgeon to leverage a settlement (Am. Compl. ¶¶ 13–14; Master Exhibit 4).

Furthermore, the complaint details that Mihelich actively pressured witness Tammy Hastings to alter and repudiate her recorded statements regarding official sexual misconduct (Id. ¶ 15). As corroborated by Plaintiff's Master Exhibit 22, upon discovering that Ms. Hastings made a public posting on Facebook revealing allegations about Sheriff Schmidt, Defendant Mihelich panicked and issued an immediate 14-hour mitigation demand via email on July 28, 2024, at 09:15 AM, threatening that unless Plaintiff immediately forced the deletion of the witness's text, defense counsel would "file an action for an injunction pursuant to the settlement agreement."

The direct purpose of this malicious behavior was to extort an unconscionable, speech-suppressing contract to hide a public official’s disciplinary history—something to which his client was "not justly entitled." Because these intentional, bad-faith acts are accepted as completely true at this threshold phase, attorney immunity is legally inapplicable under Strid.

Use code with caution.

---

II. WISCONSIN'S JUDICIAL LITIGATION PRIVILEGE DOES NOT IMMUNIZE EXTRAJUDICIAL VERBAL THREATS AND OUT-OF-COURT EXTORTION.

Defendant Mihelich next argues that his conduct is entirely insulated by Wisconsin's absolute litigation privilege. This argument fundamentally confuses a narrow speech privilege with absolute protection for extrajudicial conduct.

Wisconsin's litigation privilege protects parties and counsel from civil liability for statements made within the course of judicial proceedings to foster open, uninhibited advocacy inside a courtroom. Radue v. Dill, 74 Wis. 2d 239, 248 N.W.2d 448 (1974). However, the Seventh Circuit and Wisconsin courts have never extended this privilege to immunize extrajudicial extortion or intentional fraud executed completely outside the judicial machinery.

As set forth in the complaint, the core of Plaintiff's Abuse of Process (Count II) and IIED (Count III) claims rests heavily upon a high-pressure July 23, 2026 telephone call and corresponding written demands (Am. Compl. ¶¶ 26–27; Master Exhibit 10). During these out-of-court conversations, Defendant Mihelich stepped entirely outside of regular judicial conduct to verbally threaten an unrepresented citizen with an uncontracted $300,000.00 debt, while

intentionally fabricating material facts under SCR 20:4.1 by asserting that third parties were "financially backing" Plaintiff's transparency activities.

An out-of-court telephone conversation used to verbally panic and extract money from a pro se citizen is an extrajudicial action. It does not occur within a brief, a deposition, or a courtroom proceeding, and it bears zero proper relationship to any active judicial file. Because the privilege cannot be used to sanitize out-of-court verbal extortion, his privilege arguments fail as a matter of law.

## III. THE UNDERLYING AGREEMENT IS CONSTITUTIONALLY VOID UNDER THE LANDMARK OVERBEY DOCTRINE, EVAPORATING ANY LEGITIMATE "LITIGATION OBJECTIVE."

Throughout his brief, Defendant Mihelich attempts to sanitize his 2026 harassment campaign by framing his actions as standard, legitimate "litigation objectives" to enforce the terms of the 2024 Confidential Settlement Agreement. This defense rests entirely on the false assumption that the 2024 contract is a valid, enforceable legal instrument. It is not.

The 2024 contract at issue explicitly conditioned the dismissal of a private lawsuit upon the forced withdrawal of statutory open records requests (Section 6(c)), the permanent dismissal of a public transparency mandamus action (Section 6(d)), and a permanent publication ban regarding evidence of official misconduct, active-duty sexual aggression, and criminal trials involving an elected Sheriff (Section 6(e)).

Under the landmark First Amendment precedent Overbey v. Mayor and City Council of Baltimore, 930 F.3d 215 (4th Cir. 2019), confidentiality, non-disparagement, and "gag" clauses embedded within settlement agreements involving government entities or elected officials acting under color of law are fundamentally unconstitutional and void as a matter of public policy when weaponized to suppress a citizen's right to speak out about official misconduct or petition the government. An elected public official cannot contractually buy a private citizen's silence regarding public corruption or weaponize the courts to suppress open records transparency files.

Sheriff Brian Schmidt is an elected public official. The 2024 agreement sought to forcibly compel a scripted public retraction and apology under duress (Master Exhibit 2) to bury official public records of misconduct. Because the underlying contract is inherently unconstitutional and void against public policy from its inception under Overbey, Defendant Mihelich cannot claim he was pursuing a "legitimate litigation objective." An attorney cannot claim immunity for using extrajudicial threats to enforce an illegal instrument of government censorship.

## IV. THE COMPLAINT SUFFICIENTLY ALLEGES ALL ESSENTIAL ELEMENTS FOR BOTH ABUSE OF PROCESS AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Finally, Mihelich's claim that Plaintiff fails to allege "plausible facts" on the merits is completely contradicted by the detailed four corners of the First Amended Complaint.

To state a claim for Abuse of Process, a plaintiff must allege: (1) a willful act in the use of legal process not proper in the regular conduct of proceedings, and (2) an ulterior motive. Brownsell v. Klawitter, 102 Wis. 2d 108, 115 (1981). Plaintiff has explicitly alleged that Mihelich bypassed the court docket to manufacture an unfiled subpoena and deposition notices targeting his spouse, and used a fabricated $300,000.00 verbal threat to overbear Plaintiff's will. The ulterior motive —forcing the suppression of public records and protecting the Sheriff's political office—is detailed extensively, perfectly satisfying the Brownsell standard.

To state a claim for Intentional Infliction of Emotional Distress (IIED), a plaintiff must allege that the defendant's conduct was extreme and outrageous, intentional, and caused severe emotional distress. Anderson v. Continental Ins. Co., 85 Wis. 2d 675 (1978). Bypassing the court system to threaten an innocent, uninvolved spouse with invasive legal processing, fabricating financial funding claims, and threatening an unrepresented citizen with an uncontracted $300,000.00 liability to force a false public apology script easily crosses the boundary of standard legal advocacy. It constitutes extreme and outrageous behavior that no civilized community should tolerate. Because intent and the severity of distress are questions of fact that must be developed during discovery, dismissal at this threshold phase is completely improper.

V. PLAINTIFF'S CLAIMS ARE ANCHORED IN SUBSTANTIAL, VERIFIABLE EVIDENCE INTRODUCING EXPLICIT PROOFS OF FRAUD, PERJURY, AND WITNESS SUPPRESSION.

To further satisfy the standard of facial plausibility and completely expose the vulnerabilities of the pending motion to dismiss, Plaintiff presents the unified, multi-part evidentiary record active on this docket:

1. Verification of Substantive Criminal Investigation (Master Exhibit 23): Plaintiff has submitted official documentary proof consisting of direct email correspondence dated September 23, 2026, from Price County District Attorney Alexis N. Nash. The correspondence officially confirms that the criminal complaints and official misconduct evidence submitted by the Plaintiff against Defendants Schmidt and Mihelich have been formally processed by the State, resulting in an active determination to refer the matter to an "out of county" Special Prosecutor for independent criminal review.

2. Irrefutable Electronic Communications from Primary Defense Witness (Master Exhibit 24): Plaintiff introduces contemporaneous, written electronic communications received from primary witness and victim Tammy Hastings. This evidence completely refutes the factual assertions made by Defendant Mihelich in his July 23, 2024 settlement threat letter (Exhibit 3) where he explicitly claimed under color of law that Ms. Hastings admitted to a "consensual relationship" with Sheriff Schmidt. In Master Exhibit 24, Ms. Hastings states unequivocally under her own name: "I never said that to Schmidt or his lawyer that we had a consensual sexual interaction. That is a lie." When explicitly asked to verify her original video statement detailing her confusion and terror when driven to a secluded spot in a squad car and assaulted, Ms. Hastings responded: "That is 100% true. He is a monster."

3. Direct Procedural Leverage Wiped of Ambiguity: This newly unified electronic evidence provides critical, non-frivolous leverage regarding the active counterclaims and threshold formation issues:

a. Proofs Contractual Fraud & Duress: It proves that an officer of the court fabricated a factual admission of consent to extort a settlement signature out of a Pro Se litigant under a 26-hour exploding deadline, rendering the July 25, 2024 Agreement void ab initio.

b. Establishes Absolute Defense of Truth: It provides direct, written verification from the victim confirming the substantial truth of Plaintiff's prior commentary, completely destroying the basis for Sheriff Schmidt's Libel counterclaim.

c. Documents Ongoing Witness Suppression: It illustrates a continuous pattern of bad-faith manipulation and intimidation of victims to protect a sitting public official.

4. Natively Filed Sworn Statutory Affidavit (Dkt. 18): The text of Master Exhibit 24 is fully supported on the active record via the standalone Affidavit of Tammy Hastings, sworn pursuant to 28 U.S.C. § 1746. This stands alongside Master Exhibit 12, demonstrating that Defendant Schmidt committed structural perjury in his original 2022 Libel Complaint (¶ 7) by swearing under oath that he had never been accused of official misconduct during his entire career—a statement thoroughly destroyed by the 2000 and 2024 statements of Andrea Palas and Tammy Hastings.

CONCLUSION

WHEREFORE, the Plaintiff, John J. Brylski, respectfully requests that this Court consider Master Exhibit 24 alongside the September 23, 2026 out-of-county criminal referral (Exhibit 23), enter an Order DENYING Defendant Robert M. Mihelich's Motion to Dismiss in its entirety, modify or lift the discovery stay, and enter an expedited Scheduling Order to permit immediate depositions regarding these threshold issues of contract formation and official misconduct.

Dated this 1st day of November, 2026.

Respectfully submitted,

/s/ John J. Brylski
John J. Brylski, Plaintiff Pro Se
W2275 State Hwy 22
Gillette, WI 54124
Telephone: 920-540-2118
Email: jasnowshoe@aol.com