https://www.apg-wi.com/price_county_review/sheriff-rebukes-wisconsin-watch-allegations-as-unsubstantiated-political-attacks/article_387849f7-eadc-4381-9d10-27b64c89d286.html

FEATURED

# Sheriff rebukes Wisconsin Watch allegations as unsubstantiated political attacks

PRICE COUNTY REVIEW
Nov 19, 2026

Price County Sheriff Brian Schmidt issued a press release on Nov. 19, in response to the nonprofit online news site, Wisconsin Watch, which posted articles alleging misconduct and missing records allegations from the 1990s.

Schmidt, who is retiring in January after five terms as sheriff, said he wanted to confront accusations that are intended to cause distress to himself, his family and the sheriff's office. He said the stories include "misguided claims" that were fed to Wisconsin Watch, and are "categorically false and appear to be an ongoing five-year attack from John Brylski, who circulated similar claims during his 2022 write-in campaign for sheriff against Schmidt, which resulted in a defamation suit in 2024.

"My record speaks for itself," Schmidt said, adding that was never formally disciplined in more than 35 years in law enforcement. in the press release. "I will not let false accusations from a political opponent – accusations that he later acknowledged were false – to now be rewritten into fact. They will not be tolerated."

The Wisconsin Watch article dated Nov. 17, states that more than 70 people were interviewed during the investigative and research process including a former county human resources official who said there were formal complaints with disciplinary recommendations. Schmidt said no record of any discipline was found with official statements by a former supervisor that the Price County Board never took disciplinary action against him.

The Wisconsin Watch story by Matthew DeFour, looked into decades-old misconduct allegations through records searches and interviews. The story supports allegations that Schmidt sexually assaulted a woman in his squad car in 1990, and had "groomed" a 14-year-old in the mid-1990s as credible.

"Wisconsin Watch spent nearly four years on this story and still could not produce a single finding of misconduct," said Schmidt's attorney, Robert M. Mihelich, who also represented Schmidt in the 2022 lawsuit. "What it produced instead is a collection of 30-year-old accusations, many of them second or third hand, from a twice-defeated political rival and from witnesses whose own words and conduct contradict their current stories."

Mihelich added that Schmidt provided Wisconsin Watch with recordings, documents and photographs to prove the claims were fabricated and defamatory. The story leaves too much of that evidence regarding the retracted political attack.

Schmidt said the allegations are the same claims that Brylski circulated during his 2022 campaign, which resulted in a defamation suit. Brylski publicly retracted the allegations, he said, writing: 'I now understand Sheriff Brian S. Schmidt did not engage in any of the conduct that I accused him of and he has conducted himself honorably as the Sheriff of Price County. Mr. Brylski cannot retract his moment of lucid thought by now claiming that there is truth to these outrageous statements."

Schmidt has since filed claims in federal court against Brylski, alleging breach of the settlement agreement, defamation and abuse of process.

"At the end of the day, the federal court proceedings will show Brylski's claims to be false and he will face those consequences," the press release said.

Wisconsin Watch acknowledges the story began with a December 2022 email from Brylski, and also relies on commentary from former Price County Sheriff Richard Heitkemper, who was once Schmidt's supervisor, and was defeated by Schmidt in a sheriff's race. Schmidt said the loss was bitter, and that age, health and years since that time provide comments that differ from the reports at the time.

Regarding a 33 year old allegation that Schmidt denies ever inappropriately touching Suzy Jo Petersen in 1995, and adds that he did not make the remarks that she described in the story.

As recalled in the press release, Petersen was a youth with a group of juveniles who were snowmobiling after dark, received a citation, and was never alone with Schmidt.

Mihelich said the article has a contradiction with stating that the county board disciplined Schmidt by removing his DARE officer duties to educate youth on drug abuse in 1995. Schmidt said he went on to receive letters of commendation as the DARE officer from 1995 to 1997, and stood by then Sheriff Heitkemper at school graduations and approved him for a special warden appointment in 1997, while the article alleges that he recommended the disciplinary action.

The Wisconsin Watch story falsely alleges that he fathered a child with Tammy Hastings when she was underage, according to the press release. Schmidt said the two had a consensual encounter when she was 19 years old.

The birth certificate names another man as the father, and Schmidt said he volunteered to take a paternity test at the request of the daughter when she became of age. A circuit court judge made an on-the-record finding about the credibility of another source, according to the press release.

Despite claims of three complaints against Schmidt, the story has no records for any of them, along with allegations of an "unnamed woman" in the late 1980s to early 1990s that appear true with the information but are actually false, the response alleges.

Schmidt "categorically denies" a relationship as described and adds that the claim first surfaced in a recording between Petersen and Brylski. The woman later claimed to have a "fuzzy" memory and a circuit judge later questioned her credibility.

The segment on a 2000 traffic stop includes the driver's own four-page written complaint that objects to the scope of a search during a stop for speeding, according to the press release. The statement complains of differential treatment and allegations of sexual harassment didn't surface until Brylski's defense against Schmidt's civil case.

The absence of records does not show guilt, only that no complaints were ever actually filed, according to the press release.

View the original press release here.

## More Information

**Press Release – Response to Wisconsin Watch (Sheriff Schmidt)**

November 19, 2026

**FOR IMMEDIATE RELEASE** — November 19, 2026

**Contact:** Ronald Stadler, Stadler Sacks LLC; 262-304-0610; RSS@StadlerSacks.com

**Sheriff Brian Schmidt Responds to Wisconsin Watch Article: These allegations are part of a years-long campaign of defamatory, unsubstantiated attacks from unreliable misguided political rivals, and they omit the evidence that refutes them.**

PHILLIPS, Wis. - Price County Sheriff Brian S. Schmidt has decided that he can no longer stand silent and ignore the misguided, false claims fed to the Wisconsin Watch which it published on November 17, 2026. These claims are categorically false and represent nothing more than a five-year attack on Sheriff Schmidt's exemplary record of protecting the public. All County records show that in more than 35 years in law enforcement, Sheriff Schmidt has never been disciplined.

Wisconsin Watch interviewed more than 70 people and found no record of any discipline. Former Sheriff Richard Heitkemper confirmed that that the County Board never took disciplinary action against Sheriff Schmidt.

These false allegations are not new. They are the same claims John Brylski circulated during his 2022 write-in campaign against Sheriff Schmidt. In July 2024, faced with a lawsuit for defamation, Mr. Brylski publicly retracted the allegations, writing: "I now understand Sheriff Brian S. Schmidt did not engage in any of the conduct that I accused him of and he has conducted himself honorably as the Sheriff of Price County." Mr. Brylski cannot retract his moment of lucid thought by now claiming that there is truth to these outrageous statements.

"Wisconsin Watch spent nearly four years on this story and still could not produce a single finding of misconduct," said Attorney Robert M. Mihelich, who represented Sheriff Schmidt in the 2022 lawsuit. "What it produced instead is a collection of 30-year-old accusations, many of them second or third hand, from a twice-defeated political rival and from witnesses whose own words and conduct contradict their current stories. Sheriff Schmidt gave Wisconsin Watch recordings, documents and photographs that prove that these claims are fabricated and defamatory. Readers deserved to see that evidence. Too much of it was left out.

"**What the Article Gets Wrong or Leaves Out**

• **The source is a retracted political attack.** Wisconsin Watch acknowledges the story began with a December 2022 email from Mr. Brylski, who was running a write-in challenge to Sheriff Schmidt. He received about 6% of the vote. Brylski raised these false allegations in 2022 but later retracted his claims in writing. His claims are now the subject of pending litigation, and Sheriff Schmidt will address them in court.

• **The key "official source" is a defeated rival.** Wisconsin Watch cites Former Sheriff Heitkemper as an "official source." But Heitkemper ran against Sheriff Schmidt and lost,a loss he did not take well. Due to his age and medical conditions his "recollections" are suspect.

• **The article's own facts contradict its central suggestion.** The Wisconsin Watch article identifies that the County Board never disciplined Sheriff Schmidt by taking away his DARE duties despite Heitkemper's claim that he removed Sheriff Schmidt's DARE duties in 1995. Sheriff Schmidt stayed on as DARE officer through 1997. During that time, he received letters of commendation in August 1995, August 1996, and February 1997.

Despite these facts, the article claims that Heitkemper "removed" Sheriff Schmidt from that position, and this is simply not true.

• **Missing records are the County's responsibility, not a deputy's.** Wisconsin Watch alleges it could not find records that "should" have been held by Price County and the Sheriff's Office. From 1995 to 2001, that office was run by Mr. Heitkemper. As a deputy, Schmidt had no authority over any of them. Beyond that, the fact that a record never existed does not make it a "missing record."

• **The Article Ignored Evidence Sheriff Schmidt provided to Wisconsin Watch.** The article omits a 2025 video of Ms. Hastings chatting warmly with Sheriff Schmidt in the Sheriff's Office lobby, more than a year after Brylski recorded her accusations. It also omits a circuit court judge's on-the-record finding about the credibility of another "source."

And it omits Mr. Brylski's text offering this source a dinner and "a good buzz" before they would meet to record her statement, along with his public offer to give her half of a GoFundMe fund.

• **A key detail of the 2000 complaint is twisted.** The article claims that as a deputy Schmidt twice asked a driver whether she wanted to sit in his squad car. But the driver's own written complaint from 2000 says "the other police officer," not Schmidt, asked that question.

• **It packages the story with an unrelated cold case.** The article attempts to link Sheriff Schmidt to the disappearance of Shelly Hansen in 1987. Sheriff Schmidt has kept that cold case alive for decades. Any claim that he had something to do with that disappearance is pure fiction.

The Allegations and the Facts

1. Tammy Hastings (1990)

Any claim that Sheriff Schmidt assaulted Ms. Hastings is a fabrication. When she was 19, an adult, they had a consensual encounter.

• **Her own words.** In a 2024 conversation with Sheriff Schmidt, quoted by Wisconsin Watch, Ms. Hastings described the encounter this way: "I was drunk. We were in a car together. We had sex. We had a child." She never claimed that she had been assaulted.

• **Her own conduct.** In 2009 she signed Sheriff Schmidt's nomination papers so he could appear on the ballot for sheriff. On October 23, 2025, fifteen months after she sent Brylski her recorded "accusations, " she chatted warmly with him in the Sheriff's Office lobby. That meeting is on video.

• **Paternity.** Hastings's daughter's birth certificate names another man as the father. That man paid child support for 17 years, and Ms. Hastings never asked a court to correct the record. Sheriff Schmidt learned he might be the father only after the daughter turned 18 and asked him to take a DNA test. He agreed at once. No court ordered it. A man with something to hide would not have volunteered.

• **The "three complaints."** Despite claims of three complaints against Sheriff Schmidt, Wisconsin Watch found no record of any of them, and the article names no one who received a complaint. Sheriff Schmidt was never told of or questioned about any complaints. The absence of records does not show guilt, it shows that no complaints were ever actually filed.

**Ms. Hastings' public record.**

Wisconsin Watch briefly acknowledges Ms. Hastings' past "struggles." Public police and court records show that her past conduct has been more serious than just "struggles": a pattern of using police complaints against men to punish them, and of giving police accounts that the evidence contradicted.

• **Accusing a man after he named her (2000).** In May 2000, Ms. Hastings' former boyfriend reported to Eau Claire police that his business had been vandalized. Its locks were filled with super glue, and "slut" was written on the building. Ms. Hastings was named in his report. Eight weeks later, she accused him of sexual assault. Prosecutors charged him with eleven criminal counts based upon Ms. Hasting's allegations. In June 2001, the State dismissed every charge against the man, telling the court that, in light of "new information," it could no longer prove its case. Ms. Hastings has now admitted to Wisconsin Watch that she committed the vandalism, and that she agreed to withdraw her accusation so the case against her would be dropped.

• **Threatening another man with a rape accusation (2008).** In April 2008, a different man told Eau Claire police that Ms. Hastings had been calling him at work, threatening to "have me arrested for trying to rape her 3 years ago," and driving by his home. Police ordered her to have no contact with him. She denied making the calls.

• **A false account to police (2025).** In July 2025, Ms. Hastings drove the wrong way down a one-way alley in Phillips, struck a pedestrian with her side mirror, and drove off. She then flagged down police to give her version first, claiming the man had been yelling and "coming after her." Four witnesses contradicted her. She was cited for reckless driving–endangering safety.

• **A shifting story after a tavern assault (2003).** Chippewa Falls police arrested Ms. Hastings for substantial battery after she smashed a beer glass over a 20-year-old man's head, cutting his neck. She told police she didn't realize the glass was in her hand. She first told the officer she was intoxicated, then said she was not. Her blood-alcohol level was .16.

• **Other police contacts.** In 2007, Price County deputies cited Ms. Hasting for disorderly conduct after her boyfriend reported she had smashed his laptop and threatened to kill him.

In 2014, she was charged with disorderly conduct as an act of domestic abuse after striking her husband in the throat while the two were in a car. She later admitted slapping him.

These records do not prove that every accusation Ms. Hastings has ever made is false. They do show, however, why no accusation from her should be believed without independent proof.

3Wisconsin Watch's readers deserve to know this record. Wisconsin Watch shared almost none of it.

**2. Suzy Jo Petersen (1995)**

Sheriff Schmidt denies Ms. Petersen's thirty-year-old account. He did not touch her and did not make the remarks she described.

• **The stop.** In winter 1995, Deputy Schmidt and another deputy stopped a group of teenagers who were riding snowmobiles off the trail at night. One of them has since admitted he had drunk an entire bottle of vodka that night. The stop lasted about 15 to 20 minutes. The other deputy was present with Deputy Schmidt throughout. Ms. Petersen stayed on her snowmobile, and Deputy Schmidt was never alone with her. She received a citation for riding off the trail.

• **No discipline.** Former Sheriff Heitkemper told Wisconsin Watch that the County Board took disciplinary action based on this stop. That claim is false and there was never any disciplinary action by Sheriff Heitkemper.

• **The DARE claim does not hold up.** Mr. Heitkemper now says he removed Deputy Schmidt as DARE officer partly because of this stop. Yet, despite this claim, the facts show that Deputy Schmidt was not removed from that role by Sheriff Heitkemper in 1995 and that he earned commendations for his DARE role from the Prentice School District in 1995, 1996 and 1997. In March 1997, Mr. Heitkemper posed beside Schmidt at the Prentice DARE graduation. In July 1997, Mr. Heitkemper personally approved him for a special warden appointment.

**3. Allegations by an "unnamed woman" (late 1980s to early 1990s) are specious.**

Sheriff Schmidt categorically denies ever having a relationship as described by this "unnamed woman."

• Her account first surfaced in 2024, in a recording made by Mr. Brylski. Before recording it, he texted her offering dinner at "any place you wish" and saying he didn't mind "getting a good buzz." He later publicly offered to give her half of a GoFundMe fund.

• In that recording she described her own memory as "fuzzy."

• In 1994, a Wisconsin circuit judge told the woman on the record that she had "not proven yourself to be someone whose word can be trusted."

#### 4. The "Minnesota woman" allegations (early 1990s)

This allegation concerns a woman who has no name, no date and no documents to substantiate the claim. No one at Wisconsin Watch spoke to her. The account comes secondhand from Mr. Heitkemper and from an "anonymous" former board member. The article itself reports that the County Board did not pursue the matter. Sheriff Schmidt denies that this incident occurred, and he denies any conduct of the kind alleged.

#### 45. The 2000 traffic stop

The driver's own four-page written complaint from 2000 objects to the scope of a search during a stop for speeding. It speaks of differential treatment, not allegations of sexual comments or touching. It confirms a second deputy was at the scene, and it says "the other police officer" asked her about sitting in a squad car. Only in 2024, while supporting Mr. Brylski's case, did she recast the stop as "sexual harassment." Her words at the time say otherwise.

#### 6. The personnel file and the missing records

• In 1995, Deputy Schmidt asked to review his personnel file to make sure his commendations and training records had been placed in it. Wisconsin Watch reports that the request was sent to the County's human resources administrator, who stated that such requests were not allowed. A deputy who could not even look at his file could not "clean" it. Again, baseless allegations.

• Sheriff Schmidt has never altered, removed or destroyed any record, or directed anyone else to.

• Price County kept all records relating to Schmidt as a deputy and sheriff. Sheriff Schmidt supports the release of all records.

#### 7. The 2006 traffic citation

This was a traffic ticket for failing to stop for a school bus. Sheriff Schmidt contested it as he denied the failure to stop. He resolved it by paying a civil forfeiture. It was not discipline and not misconduct.

#### Closing

Sheriff Schmidt has served Price County for more than 35 years and was elected sheriff five times. He will retire when his term ends this year, as he announced in May, to spend more time with his family. Sheriff Scmidt stated, "My record speaks for itself, I will not let false accusations from a political opponent – accusation that he later acknowledged were false – to now be rewritten into fact. These false allegations have been used to distress me, my family and the Sheriff's Office.

They will not be tolerated." Sheriff Schmidt has filed claims in federal court against Brylski alleging breach of the settlement agreement, defamation and abuse of process. Sheriff Schmidt noted that "At the end of the day, the federal court proceedings will show Brylski's claims to be false and he will face those consequences."

(Copyright © 2026 APG Media)